# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

DAYTON SUPERIOR :
CORPORATION,
 :
    Plaintiff,                                 Case No. 3:09cv00114
 :
vs.                                         District Judge Walter Herbert Rice
 :     Magistrate Judge Sharon L. Ovington
GENERAL TECHNOLOGIES,
INC., :

    Defendant. :

---

# REPORT AND RECOMMENDATION[1]

---

## I.    INTRODUCTION

    Plaintiff Dayton Superior Corporation is in the business of supplying accessories for use in the concrete construction industry. It is a Delaware corporation with its principal place of business in Dayton, Ohio.

    Plaintiff brings this case claiming that Defendant General Technologies, Inc. infringed Plaintiff's patent for an invention known as the "Slab on Grade Chair," U.S. Patent No. 5,729,949 ('949 patent), and its patent for an invention known as the "Post-Tension Intersection Chair," U.S. Patent No. 6,925,771 ('771 patent).

    Defendant General Technologies is a Texas corporation with its principal place of business near Houston, Texas.

    This case is presently pending upon General Technologies' Motion to Dismiss for

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

Lack of Personal Jurisdiction and Affidavit in Support (Doc. #s 5, 7), Dayton Superior's Memorandum in Opposition (Doc. #8), and the record as a whole.

## II.   BACKGROUND

### A.   The Complaint

Plaintiff states in its Complaint that it "manufactures and sells plastic support chairs for use in the production of reinforced concrete." (Doc. #1 at ¶5). Plaintiff alleges, "General Technologies and its licensed distributor, MeadowBurke, compete directly with DAYTON SUPERIOR for the sale of plastic chairs used in concrete construction."[2] *Id*. at ¶6.

Plaintiff claims that General Technologies "has committed acts of patent infringement throughout the United States including within this judicial district. Pursuant to 28 U.S.C. §1391(c) and 1400(b), venue is proper in this District where GTI is subject to personal jurisdiction." (Doc. #1 at ¶4).

In support of its claim that General Technologies has infringed the '949 patent, Plaintiff alleges that General Technologies has offered to sell and sold an infringing product – a plastic rebar support chair under the trademark GTI Grade Chair® – "within the United States and in this district." *Id*. at ¶16. Plaintiff maintains that General Technologies "has also sold the GTI Grade Chair® to its licensed distributor, MeadowBurke, knowing and intending that MeadowBurke will distribute the product for resale throughout the country including within this district." *Id*. at ¶17. Plaintiff further claims that General Technologies has infringed the '771 patent. *Id*. at ¶s 21-25.

The Complaint seeks, among other several remedies, compensatory damages for the claimed infringement and triple damages pursuant 35 U.S.C. §294 for willful infringement of the '949 and '771 patents.

---

[2] It appears that the Complaint misspells "MeadowBurke" as one word, when it is correctly spelled as two words, Meadow Burke. *See* Doc. #8, Metzcar declaration, ¶s 2-7.

## B. The Evidence

In support of its Motion to Dismiss, General Technologies relies on the affidavit of its principal, Felix Sorkin. (Doc. #7). Sorkin confirms that General Technologies is a Texas corporation with its principal place of business near Houston, Texas. He explains that General Technologies is a "designer and manufacturer of post-tensioning systems, concrete accessories and related products." (Doc. #7 at ¶2).

To counter Plaintiff's personal-jurisdiction assertions, Sorkin states the following:

> 4. ... GTI has no presence in Ohio. GTI has no operations in Ohio, has no employees who work or reside in Ohio, and does not own, lease, or otherwise possess any offices, facilities, or assets in Ohio. GTI does not maintain any bank accounts in Ohio, does not have a phone listing in Ohio, does not advertise in any Ohio media, and does not maintain a mailing address in Ohio. GTI is not registered or licensed by any authority in Ohio. GTI products are manufactured in Texas.
>
> 5. GTI has never sold, not even one, ... of the products that DSC [Dayton Superior Corporation] accuses of infringement into Ohio. GTI has not provided any samples of the accused product to any company in Ohio. Since its formation in the early 1990's, GTI has and now primarily sells its products to third-party distributors. GTI's distributors then offer for sale and sell GTI's products. GTI has secured merely eight accounts in Ohio and not one of the said accounts [has] ever purchased or even inquired to purchase one of the accused products. GTI has never directly marketed the accused products into Ohio. GTI's distributors, who have their own customers and handle many different products of other manufacturers, do not report to GTI about their sales.
>
> 6. GTI's principal resides in Texas and neither he [n]or any other GTI employee has ever been to Ohio on behalf of GTI. GTI displays its products at trade shows, but has never displayed its products at a trade show in Ohio. GTI maintains an Internet web site that presents GTI's products, but GTI's products cannot be purchased through its web site. It is not possible to order GTI products from GTI over the Internet.

(Doc. #7).

Plaintiff bases its contention that this Court has personal jurisdiction over General Technologies on the declaration of Jeffrey C. Metzcar, an attorney representing Plaintiff in this case. Attorney Metzcar's declaration focuses on General Technologies' connection with Meadow Burke and Meadow Burke's connection with Ohio.

Attorney Metzcar states that Meadow Burke is a corporation headquartered in Tampa, Florida and that Meadow Burke has been a distributor of General Technologies' products. (Doc. #8, Exhibit 1). Attorney Metzcar identifies Meadow Burke's website address as www.meadowburke.com and indicates that Meadow Burke's website provides information about the products that it offers for sale. *Id*. at ¶3. Several copies of selected pages from Meadow Burke's website are attached to attorney Metzcar's declaration.

Attorney Metzcar further states:

5. Meadow Burke has offices located nationwide including 5 manufacturing plants, 4 engineering locations, and 9 service centers. One of Meadow Burke's service centers in located in Cincinnati, Ohio.

6. Meadow Burke distributes thousands of items throughout the country including rebar supports for concrete construction.

7. Meadow Burke offers to sell the GTI Grade Chair product at issue in this case.

(Doc. #8, Exhibit 1).

### III. LAW AND ANALYSIS

#### A. <u>Personal Jurisdiction</u>

"When analyzing personal jurisdiction for purposes of compliance with federal due process, Federal Circuit law applies." *LSI Industries, Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1371 (Fed. Cir. 2000); *see Autogenomics, Inc. v. Oxford Gene Technology Ltd.*, 566 F.3d 1012, 1016 (Fed. Cir. 2009) (Federal Circuit law applies to assessing personal jurisdiction "because the jurisdictional issue is 'intimately involved with the substance of the patent laws.'" ).

"A two-prong inquiry governs the determination of whether a court may properly exercise personal jurisdiction over an out-of-state defendant. First, a defendant must be amendable to process in the forum state. Second, the court's exercise of personal jurisdiction must comply with the precepts of federal due process as delineated in *International Shoe Co. v. State of Wash., Office of Unemployment Compensation and Placement*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and its progeny." *LSI Industries*, 232 F.3d at 1371.

In patent cases filed in Ohio, the first prong of the jurisdictional analysis can be established "in a variety of ways." *LSI Industries*, 232 F.3d at 1371. A plaintiff may meet its burden by showing that this Court has general personal jurisdiction over the out-of-state defendant. *LSI Industries*, 232 F.3d at 1373. "That is, when an out-of-state defendant conducts 'continuous and systematic' business in Ohio, it is 'doing business' in Ohio and is amenable to process there, even if the cause of action did not arise from activity in Ohio." *LSI Industries*, 232 F.3d at 1373.

Alternatively, an Ohio plaintiff may satisfy the first prong of the personal jurisdiction analysis by showing that the out-of-state defendant's conduct satisfies the requirements of Ohio's long-arm statute, Ohio Rev. Code. §2301.382(C). *LSI Industries*, 232 F.3d at 1373.

Prong two of the jurisdictional analysis begins with the notion that Ohio's long-arm statute does not reach the limits of the Due Process Clause. *Hildebrand v. Steck Mfg. Company, Inc.*, 279 F.3d 1351, 1354 (Fed. Cir. 2002). Consequently, even if the plaintiff shows that the defendant's conduct satisfies Ohio's long-arm statute, the plaintiff must also mollify the demands of due process. *See Hildebrand*, 279 F.3d at 1354-56 (separately conducting both prongs of the jurisdictional inquiry); *see also Bradford Co. v. AFCO Mfg.*, 560 F.Supp.2d 612, 620 (Beckwith, Chief D.J.); *Imperial Products, Inc. v.*

*Endura Products, Inc.*, 109 F.Supp.2d 809, 811 (S.D. Ohio 2000)(Rice, D.J.).[3]

> The second prong of a personal jurisdiction analysis necessitates an inquiry into whether a defendant maintains sufficient 'minimum contacts' with the forum state.... In short, the Due Process Clause requires a court to determine whether a defendant 'should reasonably anticipate being haled into court there.' *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1080). Under the 'minimum contacts' test, a defendant may be subject to either specific jurisdiction or general jurisdiction. Specific jurisdiction 'arises out of' or 'relates to' the cause of action even if those contacts are 'isolated and sporadic.' *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985). General jurisdiction arises when a defendant maintains 'continuous and systematic' contacts with the forum state even when the cause of action has no relation to those contacts. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414-16, 104 S.Ct. 1868, 1872-73, 80 L.Ed.2d 404 (1984).

*LSI Industries Inc*., 232 F.3d at 1375 (footnote omitted).

### B. Analysis

The parties have not conducted discovery at this point in the case and neither party has sought an evidentiary hearing concerning whether the Court may exercise personal jurisdiction over General Technologies. Consequently, Plaintiff must only make a prima facie showing that General Technologies is subject to the Court's exercise of personal jurisdiction. *Autogenomics*, 566 F.3d at 1017. At this early non-hearing stage of the case, the Court construes the Complaint, Sorkin's affidavit, and attorney Metzcar's declaration in the light most favorable to Plaintiff. *Autogenomics*, 566 F.3d at 1017.

### 1.

Plaintiff contends that General Technologies is subject to jurisdiction under Ohio's long-arm statute, Ohio Rev. Code §2307.382(A)(4). This statute states:

> A court may exercise personal jurisdiction over a person who acts

---

[3] *Cf. Trintec Industries, Inc. v. Pedre Promotional Products, Inc*., 395 F.3d 1275, 1279 (Fed. Cir. 2005) (noting that the two jurisdictional prongs sometimes "coalesce into one because the reach of the state long-arm statute is the same as the limits of the due process clause...").

6

directly or by an agent, as to a cause of action arising from the person's:

> ... Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state[.]

Ohio Rev. Code Ann. §2307.382(A)(4) (Anderson 2005).

Plaintiff has alleged sufficient facts, which when construed in the light most favorable to Plaintiff, make a prima facie showing that General Technologies causes tortious injury in Ohio by regularly selling its allegedly infringing products to third-party distributors, like Meadow Burke, who in turn resell those products in Ohio. Although General Technologies emphasizes that it has never sold one allegedly infringing product in Ohio and has no presence in Ohio, Plaintiff's allegations must be construed in its favor at this early stage of the case. It is therefore highly significant that General Technologies did not file a Reply Memorandum or an affidavit denying Plaintiff's assertion that General Technologies "knows and intends that its distributors will service Ohio." (Doc. #8 at 6). In addition, General Technologies concedes that it has eight customer accounts (not merely eight isolated sales) in Ohio, a fact – when construed in Plaintiff's favor – tending to show that General Technologies has reached into Ohio to sell its products and has thus actually transacted business in Ohio. Although General Technologies might not have sold infringing products through these accounts, sales of non-infringing products through these eight accounts are relevant to determining whether General Technologies derives substantial revenue from sales in Ohio. *See Imperial Products*, 109 F.Supp.2d at 814-15. General Technologies, moreover, fails to assert that it does not conduct regular business with these accounts, and it fails to specifically deny (at least presently) Plaintiff's contention that it has derived substantial revenue from products (infringing or non-infringing) it has sold or delivered into Ohio. *See* Doc. #8 at 7.

Alternatively, without more specific denials by, or contrary evidence from,

General Technologies, Plaintiff's allegations are sufficient to meet the other method of satisfying the first prong of the personal jurisdiction inquiry. That is, the record at present, when construed in Plaintiff's favor, tends to show that General Technologies has continuous and systematic contacts with Ohio through its extensive sales of non-infringing products and its broad distributorship network in Ohio. At this point in the case, as Plaintiff correctly explains, General Technologies "does not deny that it has an established distributorship network in Ohio. It is undisputed that GTI's distributors sell GTI products in Ohio. Furthermore, GTI admits that it maintains at least eight accounts with customers in Ohio. [Plaintiff] Dayton Superior believes that GTI derives at least hundreds of thousands of dollars each year from GTI's direct and indirect sales of products into Ohio. The full extent of this revenue, however, can only be obtained through discovery." (Doc. #8 at 8-9). These allegations and contentions are sufficient to make a prima facie showing that General Technologies has conducted continuous and systematic business in Ohio. *See LSI Industries*, 232 F.3d at 1374 (millions of dollars of sales of lighting products in Ohio plus a broad distributorship network in Ohio sufficient to establish "continuous and systematic" business with Ohio).

It is worth pausing to note that certain rather gaping evidentiary holes exist in the current record regarding General Technologies' contacts with Ohio. Yet, in light of Plaintiffs' allegations and contentions concerning General Technologies' connection with Meadow Burke, which is located in Ohio, and General Technologies' failure to specifically refute some of Plaintiff's assertions (just discussed above), this case should proceed to the discovery phase, at least on the personal jurisdictional issues. *See Trintec Industries*, 395 F.3d at 1282-83.

Accordingly, Plaintiff has provided sufficient allegations and evidence to make a prima facie that General Technologies is amendable to process in Ohio either under Ohio's long-arm statute or due to its continuous and systematic business activities in Ohio.

**2.**

General Technologies contends that Plaintiff cannot show that this Court's exercise of personal jurisdiction over General Technologies comports with due process. General Technologies reasons that Plaintiff has not shown the existence of general jurisdiction because General Technologies maintains its manufacturing facility and operations in Texas; because all significant decisions governing its business are formulated in Texas; and because it has never held a directors or shareholders meeting in Ohio. General Technologies emphasizes, "In fact, neither GTI's principal nor any other GTI employee has ever been to Ohio on behalf of GTI." (Doc. #5 at 6). Generally Technologies further maintains that this Court's exercise of personal jurisdiction over it would offend the notions of fair play and substantial justice by placing a significant burden on it. General Technology explains that all of relevant evidence and witnesses are in Texas; extensive travel to Ohio would be necessary to attend court proceedings; Ohio has no greater interest than Texas in enforcing patent laws; and the District Court in the Eastern District of Texas provides an effective forum, one not inconvenient to Plaintiff.

Contrary to General Technologies' assertions, when the present allegations and record are construed in Plaintiff's favor, Plaintiff has shown a prima facie case of general jurisdiction. This is so based on Plaintiff's allegations that General Technologies has a nationwide distribution network for its construction products that reaches into Ohio and that General Technologies directly sells its products in Ohio by way of eight accounts with customers in Ohio. General Technology acknowledges that these eight accounts exist, although it provides no specific information about the transactions or sales connected with these accounts. Plaintiff further contends that General Technologies derives at least hundreds of thousands of dollars in revenue from its direct and indirect sales of products in Ohio. Accepting the truth of this, as the Court must at this point in the case, the record is sufficient to show a prima facie case of general jurisdiction. *See LSI Industries*, 232 F.3d at 1374.

General Industries' contentions regarding the lack of fair play and substantial justice lack merit. The bulk of General Industries' contentions on this point focus on the extent of their activities in Texas and their lack of presence in Ohio without specifically refuting Plaintiff's allegations and contentions concerning General Industries' continuous and systematic business in Ohio, including the hundreds of thousands of dollars worth of revenue General Technologies allegedly generates from its extensive distributorship network in Ohio. Without such refutation by General Technologies, the record presently indicates that General Industries engages in such conduct in Ohio, thus making it both fair and substantially just to hale it into this Court to answer Plaintiff's infringement claims. While there will be some burden placed upon General Technologies if this case is fully litigated in Ohio, Ohio has a strong interest in adjudicating a dispute over the issue of whether an out-of-state defendant has infringed a patent owned by a corporation located in Ohio. In addition, the burden placed on General Technologies to litigate in Ohio does not outweigh Ohio's interest in adjudicating this dispute or Plaintiff's "interest in obtaining convenient and effective relief." *Breckenridge Pharmaceutical, Inc. v. Metabolite Laboratories, Inc.*, 444 F.3d 1356, 1367 (Fed. Cir. 2006). In any event, "considerations regarding witnesses and evidence 'most frequently can be accommodated through a change of venue' and are unlikely to 'become so substantial as to achieve *constitutional* magnitude.'" *Id.* (quoting in part *Burger King*, 471 U.S. at 483, 105 S.Ct. 2174)(emphasis in *Burger King*).

Accordingly, Plaintiff has made a prima facie showing that this Court's exercise of personal jurisdiction over General Technologies comports with due process.

**IT IS THEREFORE RECOMMENDED THAT:**

General Technologies' Motion to Dismiss
for Lack of Personal Jurisdiction (Doc. #5) be DENIED.


October 30, 2009

                 s/Sharon L. Ovington
                  Sharon L. Ovington
               United States Magistrate Judge

# NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).